UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00193-TBR

STACY L. PARTIN                                                                                                         Plaintiff,

v.

RON H. TILFORD                                                                                                       Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon two motions filed by Plaintiff Stacy L. Partin, who proceeds *pro se*. In his first motion, Partin requests leave to amend his complaint to add defendants. (Docket No. 35.) Defendant Dr. Ron H. Tilford responded to Partin's motion to amend, (Docket No. 43), and Partin both replied and sought to supplement his motion to amend, (Docket No. 53). Partin also filed a "Motion for Court to Take Judicial Notice Regarding Defendant's Supplemental Response." (Docket No. 54.) Partin's second motion requests funds to employ an expert. (Docket No. 36.) Tilford has not responded to this motion.

Fully briefed, these matters stand ripe for adjudication. For the reasons set forth below, the Court will DENY Partin's motion to amend, (Docket No. 35), and will DENY Partin's motion for funds to employ an expert, (Docket No. 36).

**Factual Background**

Partin, who is incarcerated at the Kentucky State Penitentiary ("KSP"), sues Dr. Tilford, an ophthalmologist at the Paducah Retinal Center, in his individual capacity, alleging that Dr. Tilford "proceeded with deliberate indifference toward [his] serious medical issue" in violation of the Eighth Amendment. Partin states that on November 6, 2012, Dr. Tilford "performed an unnecessary, complex

1

surgery" on Partin's right eye; according to Partin, Dr. Tilford "recklessly disregarded" the medical risk created by the operation and "was motivated by financial incentive." (Docket No. 1 at 4.)

Partin explains that although he lost vision in his right eye as a child, he remained able to detect some light and shape. Around May 2012, though, he began experiencing pain in that eye; by June 2012, he could no longer see any light at all. He visited the KSP optometrist, Dr. J.P. Lyles, who diagnosed a cataract that prevented Partin from seeing light. According to Partin, Dr. Lyles commented that Partin's eye remained healthy and may never need to be removed. Dr. Lyles told Partin that he would try to arrange an appointment with Dr. Tilford.

Partin states that at that appointment, after a "brief exam," Dr. Tilford urged Partin to consent to surgery to reattach the retina, "urging that this would ensure good over-all health of the eye even if it didn't restore any vision." (Docket No. 1 at 5.) He states that Dr. Tilford told him that he would schedule another appointment to further discuss surgery. After four to five weeks, however, Partin was allegedly called to the Prison medical office, where he signed a surgery consent form.

Partin alleges that Dr. Tilford had no specific surgery plan; rather, the surgery was "exploratory and experimental." (Docket No. 1 at 6.) Partin contends that because his eye was too damaged to undergo the procedure, complications resulted. Partin states:

> As an educated ophthalmologist-retinal specialist, Dr. Tilford knew this but disregarded the risks deliberately. He knew there was <u>too much</u> PVR (proliferative vitreoretinopathy) in my eye for a successful retina re-attachment. He also knew that any degree of surgery, especially of the type he planned, would in all probability prompt, or push, the eye into an unhealthy state and that it would probably continue to deteriorate to the point that I would need to be removed. To him, that simply meant more money for him. Further, from information and belief, I now know that Tilford had a reputation for being too aggressive and overzealous, seldom choosing cautiousness. In fact, Marshall Peek, a caseworker here in K.S.P., said his wife was actually employed by Tilford but <u>quit</u> due, <u>specifically</u>, to Tilford[']s aggressive attitude and his "butcher" type mentality. I'm attempting to obtain affidavits and/or declarations from the Peeks and others.

(Docket No. 1 at 7 (emphasis in original).)

Partin contends that the surgery "greatly damaged" his eye. (Docket No. 1 at 7.) He alleges that since surgery, he experiences continual burning, watering, and irritation in the eye, and that the eye has shrunk up to 40%. Partin maintains that "[d]ue to the 'downward spiral' of the health of the eye, [he is] now guaranteed more problems and continued pain/irritation" and an increased probability that he will eventually undergo eye removal and wear a prosthetic eye. He further alleges that his hand was burned during the surgery.

The Court conducted an initial review of his claims pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Partin's claims for deliberate indifference and for medical malpractice each survived initial review. (*See* Docket No. 14.)

## Analysis

### I. Motion to Amend

In his motion to amend, Partin seeks to add Dr. Steve Hiland, KSP's primary care physician, and Dr. Doug Crall, KSP medical director, as defendants to this action. Partin contends that when he realized that his eye was not healing properly after the surgery, he attempted to seek treatment from Dr. Hiland. However, Partin alleges that Dr. Hiland "chose to be deliberately indifferent" by "avoiding" Partin. (Docket No. 35 at 1.) Partin also submits that Dr. Doug Crall rebuffed Partin's complaints against Dr. Tilford, responding with only a form letter advising Partin that he would incur any medical costs associated with seeking a second opinion. (Docket No. 35 at 2.) Partin adds that his delayed request to add these defendants stemmed from his fear of retaliation, which he claims to have experienced in the past. (Docket No. 35 at 2.)

Dr. Tilford responds that Partin's motion to amend should be denied, as any viable claims against Dr. Hiland or Dr. Crall are barred by the applicable statute of limitations. Because "Congress did not

3

establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983," *Bd. of Regents of the Univ. of the State of New York v. Tomanio*, 446 U.S. 478 483 (1980), such actions are governed by the limitations period for personal injury torts in the state where the case of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in KRS § 413.140(1). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). The same one-year statute of limitations and accrual analysis applies to negligence and medical malpractice claims. *Coate v. Montgomery County, Ky.*, No. 99-6123, 2000 WL 1648131, at *3 (6th Cir. Oct. 27, 2000) (citing KRS § 413.140(1)(a), (e), and (2)).

Having determined that the applicable limitations period is one year, the Court now considers when Partin's § 1983 cause of action accrued. The Supreme Court has explained that "the accrual date of a Section 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). Accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief . . . ." *Id.* (internal citations and quotations omitted). The clock began running on Partin's claim when he knew or should have known of the injury that forms the basis of the claims alleged in his complaint. *See Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001).

The first time that Partin attempted to add Dr. Hiland and Dr. Crall as defendants was on August 26, 2014, when he filed the instant motion. By any measure, this was over one year after the date on which the applicable statute of limitations had run. *See* KRS § 413.140(1). Dr. Tilford performed Partin's surgery in November 2012, with post-operative care continuing into early 2013. He complained to Warden Randy White on a date prior to January 4, 2013. (*See* Docket No. 6-1 at 3, memorandum from White to Partin, dated January 4, 2013.) He alleges that his appointments to see Dr. Hiland on January 25, 2013, January 28, 2013, and January 30, 2013, were each cancelled. (*See* Docket No. 53-1.) The "form letter" he references from Dr. Crall was dated May 21, 2013. (Docket No. 6-1 at 3.) Even under the most lenient standard, Partin's claims were at least three months late.

4

An amended complaint naming a new party as a defendant may relate back to the date of the filing of the original complaint if (1) the claim asserted in the amended complaint arose out of the conduct or occurrence set forth in the original complaint; (2) the party to be added by amendment has received notice of the commencement of the action so that he will not be prejudiced in maintaining his defense on the merits, and (3) the party to be added knew or should have known the action would be brought against him, but for a mistake concerning the identity of the proper party.  Fed. R. Civ. P. 15(c).  Although the amendment that Partin seeks would satisfy the first element, it cannot satisfy the second and third:  there is no indication that Dr. Hiland or Dr. Crall received notice, knew, or should have known that this action could have been brought against them.  Furthermore, as the Sixth Circuit has explained, "As a general rule, an amendment pursuant to Rule 15 . . . relates back only to the matters relating to the original parties of the complaint, or to correct a misnomer or a misdescription of defendant, and not to add or substitute a new party defendant."  *U.S. v. Western Cas. & Sur. Co.*, 359 F.2d 521, 523 (6th Cir. 1966).

The Court recognizes its obligation to "freely give leave" to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), as well as its responsibility to construe *pro se* allegations broadly, *see Boag v. MacDougall*, 454 U.S. 364 (1982) (per curiam).  However, amendment of Partin's claim would prove fruitless in light of the limitations period, which itself satisfies important interests of justice.  *See, e.g., Eastridge v. Fruehauf Corp.*, 52 F.R.D. 129 (explaining that statutes of limitations "promote justice by preventing surprises through revival of claims that have been allowed to slumber until the evidence has been lost, memories have faded, and witnesses have disappeared; in other words the defense was designed to protect citizens from stale and vexatious claims." ) (citations omitted).

A district court may deny a motion to amend where, as here, the court finds that the proposed changes are futile—that is, destined to fail.  *See Jones v. Ky. Dep't of Corrections*, 2010 WL 2773386 at *2 (W.D. Ky. July 13, 2010) (citing *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1284 (6th Cir. 1997); *LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995).  For

the reasons set forth above, the Court concludes that the motion to add Dr. Crall and Dr. Hiland is futile. Accordingly, the Court will deny Partin's motion.

## II. Motion for Funds to Employ Expert

Partin also seeks funds to an employ an ophthalmologist who specializes in retinal disorders to verify his claims regarding Dr. Tilford's allegedly negligent care. Specifically, he seeks to retain Dr. P. Andrew Pearson, chair of the Department of Ophthalmology and Visual Sciences at the University of Kentucky College of Medicine. (Docket No. 36.) The Court recognizes that without the assistance an expert witness, plaintiffs in positions similar to Partin face significant, if not insurmountable, obstacles.[1]

---

[1] "Generally, if scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or decide a fact in issue, a court will utilize expert witnesses." *Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997) (citing Fed. R. Evid. 702). For a medical malpractice claim raised under Kentucky law, expert testimony is generally required to show that a medical provided failed to conform to the standard of care. *Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992). However, expert testimony is not required in *res ipsa loquitur* cases, where "the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it." *Id.* (quoting Restatement (Second) of Torts, Comment b, p. 157).

To state a cause of action under Section 1983, Partin must satisfy the mixed objective and subjective standard for determining the existence of deliberate indifference in the context of the Eighth Amendment:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Although expert testimony is typical in such cases, it is not necessarily required. As the Seventh Circuit has explained:

> Because the test for deliberate indifference is more closely akin to criminal law than to tort law, the question of whether the prison officials displayed deliberate indifference toward [Plaintiff's] serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment. The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care.

*Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997) (citing *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir.), cert. denied, 479 U.S. 816 (1986)).

The Supreme Court has held that "expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress." *United States v. MacCollom*, 426 U.S. 317, 321 (1976). The plain language of the *in forma pauperis* statute does not provide for the appointment of expert witnesses to aid an indigent litigant. *See* 28 U.S.C. § 1915. "[A] prisoner's right of access to the courts does not entitle him to have the public fund his general litigation expenses, such as witness fees." *Baker v. County of Missaukee*, No. 09-01059, 2011 WL 4477154, at *3 (W.D. Mich. Sept. 26, 2011). (citing *Johnson v. Hubbard*, 698 F.2d 286, 288-89 (6th Cir. 1983); *Pedraza v. Jones*, 71 F.3d 194, 196 (5th Cir. 1995)).

Partin points to Federal Rule of Evidence 706(a), which "confers on a district court the discretionary power to appoint an expert witness on the court's own motion or on the motion of any party." *Fugitt v. Jones*, 549 F.2d 1001, 1006 (5th Cir. 1977). District courts enjoy broad discretion in deciding whether to appoint such experts. *United States v. State of Mich.*, 680 F. Supp. 928, 987 (W.D. Mich. 1987). However, "[t]he rule does not provide a method by which the court may afford expert witness testimony to an indigent litigant at public expense. Congress has not appropriated any funds for the hiring of expert medical witnesses to support the claims of indigent civil litigants." *Baker*, 2011 WL 4477154, at *3 (W.D. Mich. Sept. 26, 2011). Moreover, Rule 706 functions not to offer financial assistance to indigent litigants, but only to aid the court. *See Dodson v. Wilkinson*, 304 Fed. App'x 434, 442 (6th Cir. 2008); *see also Baker*, at *4 ("Although the court has the ability to grant such relief, it requires a strong showing both that plaintiff's case is meritorious and that the appointment of a Rule 706 expert is necessary to aid the court.") (*citing Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008)). Because Partin has made no showing that appointment of a Rule 706 expert is necessary to aid the Court, his motion will be denied.

## CONCLUSION AND ORDER

For the reasons explained above, the Court hereby DENIES Partin's motion to amend, (Docket No. 35), and further DENIES Partin's motion for funds to employ an expert, (Docket No. 36).